DESPATCH LAUNDRY COMPANY v. EMPLOYERS' LIABILITY ASSURANCE CORPORATION.[1]

Nos. 15,719—(223).

August 14, 1908.

**Continuance—New Issues.**

When in the course of trial the court grants plaintiff's motion to amend the complaint by omitting certain facts which had been admitted in the answer and by tendering entirely new issues, and the defendant claims to have been misled, and is not prepared to proceed with the trial and requests a continuance of the case, the defendant cannot be required to disclose by affidavit the names of witnesses, nor what particular evidence he desires to produce upon another trial, as a condition to a continuance.

[1] Reported in 117 N. W. 506; 118 N. W. 152.

**Same.**

*Held*, on the facts as they appear from the record, it was error to deny appellant's motion for continuance; the court having granted respondent's motion to amend the complaint, substituting entirely new issues.

### Reargument.

#### November 6, 1908.

**Continuance.**

The trial court having granted respondent's motion to amend the complaint by striking out certain admissions and substituting entirely new issues, appellant was entitled to a continuance. Former decision adhered to.

**Indemnity Insurance—Meaning of Policy.**

An indemnity insurance policy provided: "All the mangling machines owned or operated by the assured shall be provided with fixed guards or safety feed tables, adjusted at the point of contact of the rolls so as to prevent the fingers or hands of the employees from being drawn into the rolls." *Held*, the assured did not guarantee that the machines and guards used should be such as would prevent injury, but agreed to operate such machines only as would practically accomplish the use for which they were intended, and be so guarded that, so far as practicable, they would prevent employees from injury during their labors.

Action in the district court for Hennepin county to recover $4,676.80 upon an employer's liability insurance policy. The case was tried before Dickinson, J., and a jury. During the trial, plaintiff moved to amend the complaint. Defendant objected to the amendment on the ground that it would introduce a new issue and further stated that if the amendment were permitted a continuance of the case would be necessary. Plaintiff's amendment was allowed but defendant's application for a continuance denied. The trial proceeded and the jury rendered a verdict in favor of plaintiff for $4,680.38. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed.

*Cobb & Wheelwright*, for appellant.

*Stephen Mahoney* and *Lancaster & McGee*, for respondent.

LEWIS, J.

On October 6, 1906, appellant corporation, in consideration of a premium of $64.69, issued to respondent company a policy of em-

105 M.—25

ployer's liability assurance, whereby it agreed to indemnify respond ent against loss from liability imposed by law upon it for damage on account of bodily injuries, including death, resulting from ac cident suffered by any of its employees within or upon its premise at the location described in the policy. The policy contained th following special provision: "It is hereby understood and agree that all the mangling machines owned or operated by the assure shall be provided with fixed guards or safety feed tables adjuste at the point of contact of the rolls, so as to prevent the fingers o hands of the employees from being drawn into the rolls, and tha such guards shall be maintained during the term of this policy. An failure on the part of the assured to provide and maintain such guard shall relieve the Employers' Liability Assurance Corporation, Limi ed, from liability on account of personal accidents due to such neg ligence, and this policy is accepted accordingly."

After the policy was issued, and while it was still in force, r spondent installed in its laundry a large Hercules mangle, operate by electric power and manufactured by the Watkins Laundry M chinery Company. On March 23, 1907, Elise Sorenson was emplo ed as an operator in respondent's laundry, and while working on t mangle above mentioned her left hand was caught under the gua roll and drawn into the machine, with the result that it was so ba ly burned that it was amputated at the wrist. Miss Sorenson su sequently brought an action against respondent to recover damages f her injuries, and charged in her complaint that the mangle on whi she was hurt was a large and dangerous machine, having upon it so-called safety device which was intended to cause the feed roll open in case anything of unusual thickness, such as the hand of employee, should come in contact with it; that it was responden duty to keep such safety device in working order; that on the d of the accident respondent negligently tied and fastened the safety vice so that it could not operate, thus leaving the mangle in a dang ous condition, which fact was unknown to her; and that by reas thereof she received her injury.

Upon being served with the summons and complaint in that tion, respondent delivered the same to appellant and called upon to defend the action, which appellant declined to do upon the grou

that it was not liable, for the reason that it appeared from the complaint that respondent had, by its own act in tying down the feed roll, destroyed the effectiveness of the same as a safety device. Thereupon respondent, under advice of counsel, settled the action and paid to Elise Sorenson $3,900 and her doctor and hospital expenses, and immediately commenced this action against appellant to recover the amount paid in such settlement, together with reasonable attorney's fees.

The complaint sets out the necessary allegations respecting the issuing of the policy and its contents, alleges that on July 25, 1907, Elise Sorenson commenced an action against respondent for the recovery of $15,000 damages, and copies of the summons and complaint in that action were attached as exhibits to the complaint. It is further alleged that appellant, having denied any liability under the policy, returned the summons and complaint, and that a settlement as above stated was thereupon effected, and "that plaintiff was liable to said Elise Sorenson on the cause of action set out in her complaint, and was bound to respond to her in damages on account of said accident, and she was in truth and in fact injured and damaged thereby in an amount very largely exceeding $3,900, and if said action had been allowed to proceed to trial and judgment she would have recovered from plaintiff an amount largely in excess of $3,900." In the complaint in the action commenced by Elise Sorenson against respondent the ground of negligence charged was "that the said ironing mangle was a large and dangerous machine, having upon it a so-called safety device, which was intended to cause the feed rolls to open in case anything of unusual thickness, such as the hand of an employee, should come in contact with them; * * * the said defendant wilfully, wrongfully, and unlawfully, carelessly and negligently tied and fastened the said so-called safety device, so that it could not operate, thus leaving the said ironing mangle in a very dangerous position and condition, unknown to this plaintiff, as defendant then well knew; * * * that by reason of said defendant's said wrongful, unlawful, wilful, negligent, and careless conduct in failing to place said machine in a safe place, and in failing to fence or otherwise protect said ironing mangle, and in tying said rollers and the so-called safety device, and permitting plaintiff to

work at the same without notifying her of the dangers thereof as aforesaid plaintiff was so injured. * * *"

Appellant answered, and denied its liability upon the special ground that under the terms of the policy respondent had failed to provide and maintain the mangle with any fixed or other guard, or any safety feed table, as provided by the terms of the policy contract, set out the terms of the policy, and admitted that Miss Sorenson had commenced an action against respondent and that it had declined to defend the same.

Respondent replied, by denying that the policy contained a provision that it should maintain fixed guards sufficient to prevent injury to its employees, and alleged "that the mangling machine in which said Elise Sorenson was injured was provided with a fixed guard adjusted at the point of contact of the rolls, and plaintiff denies that said Elise Sorenson was injured because plaintiff negligently or otherwise failed to provide said machine with a fixed guard adjusted at the point of contact of the rolls, or because it failed to maintain such guard during the life of said policy." Respondent recovered a verdict for the amount of $4,680.38.

It will thus be seen that two main issues were presented by the pleadings: First, whether the feed roll, so called, upon the Watkins laundry mangle, which was installed by respondent after the policy was issued, and upon which Elise Sorenson received her injuries constituted such a fixed guard, or safety device, as was contemplated by the parties by the use of the language employed in the policy And, second, if the feed roll was such a device or guard as came within the provisions of the policy, did respondent destroy the effectiveness of it as a guard or safety device by negligently tying down one end of the roll, and, if so, did such act constitute the proximate cause of the injury?

After the case had been on trial for about three days, Mr. Norris president of respondent company, was placed on the stand, and asked the question whether or not Elise Sorenson was a person of ordinary intelligence, and counsel for appellant objected on the ground that it was incompetent and immaterial. Respondent then moved to amend the complaint by inserting, as the only ground of negligence which caused the accident, the fact that Elise Sorenson was a pe

son of less than ordinary intelligence, wholly inexperienced in operating a machine of the type under consideration; that her only experience had been in operating a small and slowly running mangle, whereas the one she was operating at the time of the accident was a large, complicated, swift-running, and dangerous machine; that she had been allowed to go to work on this large machine without proper instructions, and that respondent negligently failed to keep a proper supply of tools on hand in the mangle room in case of accident; and that respondent's manager negligently failed to properly acquaint himself with the mechanism of the large mangle, and that by reason of all such negligent acts the girl was injured.

Counsel for appellant objected to the proposed amendment in the following words: "If your honor please, I have prepared this case upon the theory that the only claim of negligence which could be made against this plaintiff on the part of Elise Sorenson was that set forth in the complaint. I have prepared this case upon the theory also, if your honor please, that the admissions contained in that complaint as to the fact that there was a safety device upon that machine and that this plaintiff negligently and carelessly permitted that safety device to become out of order is an admission on the part of this plaintiff that the clause in that policy was violated, and I had practically made up my mind that I should almost entirely rest upon those admissions." Counsel further stated that, if the court should permit the amendment, it would be necessary for appellant to have a continuance of the case.

Following this objection and request for continuance, a running controversy took place between counsel and the court, which occupies sixteen pages of the record. It was contended on the part of respondent that there was no necessity for a continuance, for the reason that the entire transactions had been fully covered by the evidence, without objection, and that appellant was not taken by surprise, for the reason that all of the witnesses whom appellant could reasonably expect to have on the subject had been present during the trial and were still available.

The court was in doubt whether appellant had a right to assume that respondent intended to rely alone upon the fact that the accident occurred by reason of the tying down of the feed roll, but final-

ly stated that if counsel for appellant would cause an affidavit to be made to the effect that such admission had been relied upon, and that he had consequently not made full preparation for trial, a continuance would be granted. Counsel for respondent renewed his claim that appellant's witnesses had been in court, and that it was not sufficient ground for a continuance merely because appellant would make an affidavit to the effect that he had not made as full and complete preparation as he otherwise would have made, had the admission not been inserted in the complaint. Appellant still insisted that he was not prepared to go on with the trial and finally the court denied the application for a continuance and the trial proceeded.

This order is assigned as error, and we are of opinion that a continuance should have been granted. The evidence had covered considerable scope, and in some respects tended to develop the true character of the feed roll; but the main controversy was over the effect produced by tying down the roll at one end, respondent contending that its effectiveness as a guard was not interfered with because of that fact. So far as we are able to discover, appellant relied upon the admission in the complaint that tying down the roll was the cause of the accident. Therefore, when respondent attempted to introduce evidence of an issue not in the pleadings, by interrogating Mr. Norris, president of respondent company, as to the intelligence of the injured girl, appellant was entitled to object to that line of inquiry, and respondent was forced to amend its complaint. It did so by entirely eliminating the original ground of negligence upon which the settlement was made, and introducing a new issue.

Under such circumstances appellant company could not be called upon to disclose what particular additional witnesses it would call, provided a continuance was granted, nor could it be required to disclose what such testimony would be. Appellant was not responsible for the condition which made an amendment to the complaint necessary. A suggestion by reputable counsel that the case had been prepared for trial upon the issues presented by the pleadings, and that he was not prepared to go on with the trial upon the new issues, was all that could reasonably be required under the circumstances presented by this record. In a case where there is such a

radical change of issues by amendment to the complaint in the course of the trial, counsel for defendant could not, until investigation, be expected to specify what additional witnesses would be called to meet the new condition. While recognizing that the trial court was endowed with the power to exercise reasonable discretion, we believe that the amendment placed the defendant in a position which required a continuance of the case.

Reversed.

A reargument having been granted, the following opinion was filed on November 6, 1908.

LEWIS, J.

Respondent made application for a rehearing in this case upon the ground that the court had fallen into manifest error in assuming that appellant made any objection to the allowance of the amendments and complaint, and that the continuance requested by appellant was upon the ground that such amendments introduced new matters which appellant was not prepared to meet, and upon the further ground that the court had failed to pass upon certain questions of law which had been fully presented and argued, and which are essential to a final determination of the case.

We have reviewed the record, and, although the questions at issue were much confused by the character of the pleadings, the manner in which the case was tried, and the amendments offered by respondent at the close of the case, we are still of opinion that under all the circumstances a right decision was reached upon the former argument. The original complaint upon which respondent went to trial presented a single ground of negligence upon which it sought to recover, and that was the issue presented by the complaint in the action brought against respondent by Miss Sorenson, which action appellant refused to defend. The answer of appellant set out as a special defense the so-called "rider" to the policy, referred to in the former opinion. While the answer does not specifically deny the allegations of fact constituting the cause of action pleaded, it is manifest that appellant in so answering did not intend to relieve respondent from making a prima facie case upon the complaint tendered.

Objection was made, from time to time, to the introduction of any evidence upon the ground that the complaint contained an admission that the sole cause of the injury was the failure of respondent to install and maintain a proper guard, as contemplated by the policy. Under such circumstances the pleadings should not be technically construed, and we are of opinion that it was not the intention of appellant to waive its right to take advantage of the admissions in the complaint. The effect of the amendment was, not only to introduce entirely new grounds for recovery, but also to strike out absolutely all reference to the cause of action set out in Miss Sorenson's complaint. In so doing respondent shifted its position. It fairly appears from the record that the evidence with reference to the ignorance of Miss Sorenson—her lack of instruction and the failure to supply the necessary tools, etc.—was developed incidentally to the main issues presented by the original pleadings, and that there was no intention at the time to litigate issues not within the pleadings.

In view of a new trial, we deem it wise to determine at this time a question of law which involves the proper construction of the so-called "rider" set out in the former opinion. But in the first place it should be stated that whether this typewritten rider constituted in fact a part of the policy is not before us. The trial court held, contrary to the views of respondent, that it was a part of the policy, and there was no appeal from that decision. That part of the rider involved in this question reads: "All the mangling machines owned or operated by the assured shall be provided with fixed guards or safety feed tables, adjusted at the point of contact of the rolls so as to prevent the fingers or hands of the employees from being drawn into the rolls," etc. Upon this question the court charged as follows:

"Was there provided and maintained upon this large mangle, at the time of the accident, a fixed guard, performing the function and purpose of preventing as far as practicable the fingers or hands of the employees from being drawn into the rolls? * * * Such a guard as was proper and customary the plaintiff claims was in fact on this machine, and of the latest approved and known standard type, and maintained there in operation and effectiveness just as required by the terms of its contract of insurance with the defendant; and if you should find this to be the fact then your verdict should be for

the plaintiff.  *  *  *  Plaintiff's duty was to provide and maintain such a guard as, while practicable to the operation of the machine, yet at the same time had protective features tending to protect the fingers or hands of operatives from injury by getting into the rolls, and to maintain the same in such a condition that the protective features would not be destroyed in any material respect. *  *  *  It was the duty of the plaintiff to provide the safest possible guard consistent with the practical operation of the machine."

It is the claim of appellant that the words "so as to prevent the fingers or hands," etc., strictly construed, mean that respondent undertook to guarantee that it would use such a machine or such guards as to absolutely prevent accident to its employees. We agree with the learned trial court that respondent contracted to operate such machines only as would practically accomplish the use for which they were intended, and be so guarded that, so far as practicable, they would prevent employees from injury during their labors. There was no absolute guaranty. The construction contended for by appellant would remove all idea of risk, which would be directly opposed to the spirit of the contract.

New trial granted.